[Appeal of Nancy Neel.]

pended altogether upon the will of McCandless or Gill, to whom he had assigned. But neither of these parties ever attempted to enforce this part of the contract, and all right and power to do so forever passed from Gill when he accepted Love's mortgage for the purchase money and executed to him the deed of May 12, 1877.

Under the circumstances as above stated, McMurray's possession, whatever it may have been, amounted to nothing, for it was without right, and was not continued long enough to make title by the statute of limitations.

Judgment affirmed.

OCTOBER AND NOVEMBER TERM, 1882, No. 162.    OCTOBER 23, 1882.

## Appeal of Nancy Neel.

1. Where a deceased owner of a coal mine leaves surviving him a widow and minor children, the guardian of the children may, under the act of April 25, 1850, P. L., 573, operate the mine, or have it operated, to exhaustion, for the benefit of his wards; and he may lease it at a certain rent per hundred bushels of lump coal, in accordance with the universal custom of the trade in the region where the mine is located, which excludes rental for nut coal and slack.

2. Being bound to treat the mine as an entirety, he may lease the interest of the widow with that of his wards.

3. The lease having been made at a fair rental value, he is not bound to account to the widow as to her one-third interest for more than he is entitled to receive under the conditions of the lease.

4. Under a bill in equity, filed by her for an account in such case, the decree may embrace all the coal that may be taken out during the future continuance of the lease.

5. The costs in such a case were properly divided equally between the parties.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, and GREEN, JJ.    STERRETT, J., absent.

Appeal of Nancy Neel from the decree of the Court of Common Pleas No. 1 of *Allegheny County*, directing a sum of money to be paid to her, a future accounting by one of the defendants, and that the costs be divided equally between the parties.

Bill in equity filed by Nancy Neel, widow of William Neel, against John F. Dravo, who was guardian for the four minor children of the said William Neel, and Harvey Hutchinson, praying for an injunction, the appointment of a receiver, and an account.

[Appeal of Nancy Neel.]

August 6, 1881, D. F. Patterson, was appointed master to take testimony, find the facts, and report form of decree.

The master found, *inter alia*, the following facts :

The controversy between the parties arises upon a bill in equity filed July 16, 1881, by Nancy Neel, who is the widow of William Neel, who died intestate on March 18, 1880, leaving to survive him the said widow and four minor children, of whom John F. Dravo, one of the defendants, is guardian. At the date of his decease, William Neel was the owner, amongst other property, of an opened coal mine, located in Allegheny county, on that part of the Monongahela river known as Pool No. 2, together with the usual appurtenances and appliances for mining and marketing coal in that coal region.

The defendant, Dravo, as guardian of the minor children, entered upon the possession of this coal mine, with certain of the appurtenances and equipments, and, on June 27, 1881, let the same to the other defendant, Harvey Hutchinson, for a term of two years, at the rate of fifty cents per hundred bushels for all the lump coal to be mined during the term by the lessee. The plaintiff did not join in the lease.

The product of coal mines in this coal region consists of three grades, to wit: First, the lump or merchantable coal ; second, the nut coal ; and third, slack or dust. There is no dispute that there is a universal custom, well known and acted upon by the coal operators in the Monongahela coal region, to lease mines at a certain rate per hundred bushels of the lump coal mined, without any account to be given by the lessee of the nut coal and slack ; and it is further a universal custom to pay the miners for the lump coal only, at a certain rate per bushel for mining.

The defendant, Dravo, has all along been willing to account, and has accounted, to the plaintiff for the lump coal mined by his lessee, at the rate of fifty cents per hundred bushels, as provided for in his lease to the defendant, Hutchinson.

The plaintiff's counsel insisted upon the production of the books of the defendant, Hutchinson, for the purpose of introducing evidence to prove the entire product of the mine since he has operated it, together with the amounts received by him from the sale of such product, including nut coal and slack, and the costs and expenses incurred by him in mining and marketing such product. The master refused to order the production of such books for such purpose, and excluded all testimony relating to the

quantity of nut coal and slack mined by Mr. Hutchinson, or to the prices received by him for any of the coal mined by him, or of his outlays and liabilities in mining and marketing the coal.

The mine in question had been operated for many years, at least thirty years prior to William Neel's decease, by William Neel and others. The body of coal so operated upon consisted of upwards of two hundred and fifty acres. At the date of his death, the coal had all been mined out except remnants, consisting of small blocks, not exceeding an acre or two each, of solid coal, located for the most part at places in the mine distant from the pit mouth and from each other, and of pillars and ribs situated in different parts of the mine, some of them in places where the mine had been worked as long as thirty years ago. The entire amount of coal remaining when Mr. Dravo took charge of the property, including pillars and ribs, was from twelve to fifteen acres. William Neel had operated the mine up to the date of his death. At that time, he was in possession of a lease of a river front for landing and loading barges and flats; and he was owner of barges and flats for marketing the product of the mine, an incline plane and tracks for running coal from the pit mouth to the river, and of mules, pit wagons, dram wagons, and the usual equipments of such mines in that coal region.

After William Neel's decease, his widow, the plaintiff, administered his personal estate and settled her account as administratrix. All of the personal property connected with the mine was inventoried and appraised, and she was charged with it in her administration account, and the mine was operated for awhile under her authority, and the proceeds accounted for. The defendant, Hutchinson, was in her employ, and aided her in administering her husband's estate. A considerable portion of the personal property that had been used in connection with the mines was sold by the administratrix, and the proceeds accounted for; but, upon consultation with the guardian of the children, Mr. Dravo, and with his consent, she retained unsold seven mules, valued at $650, nine flats, valued at $1,800, and eighty pit wagons, valued at $1,200, for which she received credit at the valuation in her administration account. These mules, flats, and pit wagons were retained by the consent of all interested parties, (there being no creditors interested,) for the purpose of being used in working out the remaining coal from the mine.

The mules, flats, and pit wagons were transferred by

[Appeal of Nancy Neel.]

the plaintiff to the defendant, Dravo, to hold to the extent of two thirds for his wards, and to the extent of an undivided one third in trust for the plaintiff, as widow.

About the same time, the defendant, Hutchinson, made an offer to Mr. Dravo to lease the mine, with certain appurtenances and privileges, and Mr. Dravo, as guardian, presented his petition to the Orphans' Court of Allegheny county for authority to lease on the terms offered, with the plaintiff's consent, and the said Court made the order as prayed for.

William Neel was the owner, at the date of his decease, of about twenty-five to thirty dwelling-houses, which were intended to be occupied by miners employed in the pit. Such dwellings for miners are connected with nearly all, if not all, coal works in this coal region. They are let to the miners at certain rates, and the rental deducted from such miners' wages. It is a universal custom, in the letting of coal works, that the rent of the miners' houses goes to the lessee, unless special provision to the contrary is made in the lease. An offer for the rent of coal works at a specified rate per hundred bushels is understood amongst persons engaged in the trade to be an offer of so much per hundred bushels of lump coal, including the use of miners' houses and the equipments of the mine.

There was a large quantity of iron in the pit at the date of the lease, in use for tracks in the main entries, the exact value of which I am unable to find from the testimony. Mr. Serena, who is now, and for twenty years has been, the foreman in the Neel mines, testified that there is iron enough in the mines to lay from one and a half to two miles of double track, and that it would sell for about forty dollars per ton. Under the terms of Mr. Hutchinson's lease, he is required to remove this iron from the pit and deliver it on the adjoining grounds to the lessor. It will cost about one hundred and fifty dollars to remove it as required by the lease.

Mrs. Neel testified that Mr. Dravo told her that Mr. Hutchinson would give fifty cents a hundred bushels for the coal and take the iron out, and she told him she did not want Hutchinson to have it, that she would give sixty cents herself, and give security in ten thousand dollars, or put up the money for security.

Mr. Dravo testified that Mrs. Neel delayed so long in complying with the terms proposed that he, under the belief that the estate was suffering from allowing the mines to remain idle, applied, on June 25, for authority to lease without her joining in the lease.

[Appeal of Nancy Neel.]

Upon this testimony, taken in connection with the facts hereinafter stated, and found relating to the necessity for promptness in operating this old mine, I do not feel warranted in finding as a fact that Mr. Dravo could have made a more favorable lease to Mrs. Neel than that which he did make to Mr. Hutchinson.

That old coal mines, worked out to the extent that the Neel mine had been worked at the date of Mr. Hutchinson's lease, command considerably less rental than mines of bodies of solid coal.

The interests of Mr. Dravo's wards, as well as that of the plaintiff, in the Neel mines, were liable to become impaired by allowing the mines to remain idle.

Fifty cents per hundred bushels of lump coal was a fair rental value of the property leased by Mr. Dravo to Mr. Hutchinson, and the lease made, upon the conditions therein named, was a favorable lease for the wards of Mr. Dravo, as well as for the plaintiff.

The lump coal mined by Mr. Hutchinson, under his lease, up to June 1, 1882, is 841,744 bushels.

The master reported as follows:

"By the act 25th April, 1850, it is provided that when coal mines are owned by tenants in common, and coal has been taken out by any one of such tenants, any coöwner may proceed by bill in equity for an account of the coal so taken out. In Coleman's Appeal, 12 P. F. Smith, 252, it is held (see pp. 278-9) that the just basis of account in such cases is the value of the coal in place in the mine, or, as it is termed, mine leave. The method of ascertaining such value is said to depend in large measure upon the circumstances of each particular case. In that case, which related to an ore mine peculiarly situated, the accounting was based upon the value of the ore at the pit's mouth, less the cost of mining; but the learned judge who delivered the opinion was careful to say: 'We do not mean to say that it would hold in any other case than the one now before the Court—certainly not where the mining is expensive and hazardous.'

"The plaintiff's counsel contends that Mrs. Neel, as widow, is entitled to receive one third of all moneys obtained from the sale of coal taken out of the Neel mine under the authority of her co-tenant, less her proportion of all necessary outlays incurred in mining and marketing the coal, and keeping the mine and other property used in connection with it in proper working order. It is claimed that, as the coal taken out was all sold in flats at the landing connected with the works, and as the plaintiff

is willing to bear her proper share of all expenses and risks incident to the running of the works, the only proper basis of accounting, and that which most nearly accords with the views taken in Coleman's Appeal, is the amount received for all grades of coal mined and sold, less the expenses of carrying on the work. It is contended that such would undoubtedly be the rule if her co-tenant had operated the mines in person; and that he could not grant to a lessee any greater right or less burdened right, with respect to accounting, than he himself could have exercised.

"The defendant, Dravo, claims that, as the representative of the plaintiff's minor co-tenants, he had the authority to enter the mine and work it to exhaustion, in order to preserve and secure the interests of his wards; that he was not bound to operate the mine in person, but had the right to let it out to be operated in the customary way of letting mines in that coal region, on the basis of a rental of so much per hundred bushels of lump coal, exclusive of nut coal and slack; and, that having so let out the mine to a competent lessee, at a fair rental value, he is not bound to account for more than the quantity of lump coal taken out, and, for that, only at the rate per hundred bushels provided in the lease.

"In my opinion, Mr. Dravo, as guardian of the minor children of the deceased owner of the mine, had lawful authority to operate the mine, or have it operated, for the benefit of his wards: Coleman's Appeal, *ante;* and he had the right to work it, or have it worked, to exhaustion: Westmoreland Coal Company's Appeal, 4 Norris, 344. It does not seem doubtful to me that he had the right to work the mine, or to let it out to be worked, in accordance with the universal custom practiced by persons engaged in the trade in that coal region. The testimony clearly establishes the fact that he could not permit the mine to remain idle without serious risk of injury to the interests of his wards. He was not bound to embark the estate of his wards, or his own personal estate, in the uncertain business of operating an old coal mine. He had the right to have the mine worked, as any owner of a similar mine would have it worked. He was bound to treat the mine as an entirety, and, in letting out the interest of his wards, he had no recourse from letting out the interest of the plaintiff. If he had lawful right to make a lease of the mine, Mr. Hutchinson had lawful right to take the lease; and, in that event, Mr. Hutchinson cannot be held to account beyond the provisions of

the lease. If the lease was made at a fair rental value, or bank leave, Mr. Dravo cannot be held to account for more than he is entitled to receive under the conditions of the lease.

"If this view of the law be correct, it settles the controversy, for I have found as a fact that Mr. Dravo is entitled, under the lease, to receive the full rental value of the mine and property let to Mr. Hutchinson.

"The lump coal taken out of the mine up to June 1, 1882, under the authority of the lease made by Mr. Dravo, is 841,744 bushels, which, at the bank leave stipulated in the lease, amounts to $4,208 72, of which amount the plaintiff is entitled to receive one third, to wit: $1,402 90.

"In the view I have taken of the law governing the case, I have not thought it necessary to consider to what extent, if at all, Mr. Dravo is protected by the order of the Orphans' Court authorizing him to make the lease.

"The act upon which this proceeding is founded provides for taking an account of the coal taken out of a mine, and there may be a question as to the power of the Court to make any decree at this time relating to the coal hereafter to be mined during the period covered by the lease. This question has not been argued nor suggested by counsel; but, if the view I have taken of the law be correct, the lease is operative during its full term, and, as the act contemplates the settlement in one proceeding of all interests involved, I am of opinion that the decree should embrace all the coal that may be taken out under the lease. The lease provides for semi-annual accounts and payments from Mr. Hutchinson to Mr. Dravo, and I suggest that similar accounts and payments be made by Mr. Dravo to the plaintiff.

"As Mr. Dravo has always been willing to account to the plaintiff in accordance with the provisions of the lease, I see no occasion for imposing any portion of the costs of litigation upon him."

The plaintiff filed exceptions to master's report, *inter alia*, as follows:

The master erred—

*Third.* In excluding testimony as to quantity of nut coal and slack mined, and the cost of operating the mines.

*Fourth.* In reporting that the plaintiff was bound to accept the terms of the lease made by John F. Dravo to Harvey Hutchinson.

*Fifth.* In not reporting to the Court the "proceeds" of the mine in question.

*Seventh.* In finding that fifty cents per hundred bushels

[Appeal of Nancy Neel.]

was the fair leasing value of the mine in question, and that the lease in question was the most favorable that could have been made.

*Eighth.* In finding that Mrs. Neel had no cause of action, and for this reason imposing costs upon her.

*Eleventh.* In recommending that plaintiff have an account of the "merchantable coal" *only*, and thereby excluding and wrongfully depriving her of one of the principal sources of profit accruing to her, and to which she is by law entitled, to wit, the "nut coal and slack."

These exceptions were dismissed by the Court, except that as to costs, which were equally divided, and a decree was entered ordering defendant Dravo to pay to plaintiff $1,402 90, her proportion of the rental value up to June 1, 1881; that he should account for and pay over to said plaintiff one third of the money he may be entitled to receive under the provisions of the lease at the times provided in said lease for payments by defendant Hutchinson during the continuance of the lease, and that the costs be equally divided between the parties.

Plaintiff thereupon appealed, and assigned as error the dismissal of the exceptions and the entry of the above decree.

*J. McF. Carpenter* for appellant.

The sale or lease by one co-tenant of a chattel makes the purchaser and the other co-tenants tenants in common of the whole, Oviatt *v.* Sage, 7 Conn., 95, and makes the lessee in possession liable to account to them : Barnum *v.* Landon, 25 Conn., 137; Coal Co.'s Ap., 4 Norris, 344. The only right that defendant Hutchinson has is to mine the coal and account to plaintiff for her share of the product or proceeds of the mine. The lease of the two-thirds interest did not vest the title in the lessee of plaintiff's one-third interest : Job *v.* Potton, 32 Law Times, 112; Barnum *v.* Landon, *supra.*

The basis for ascertaining the damages of the tenant in common not leasing, should be his share less the cost of mining and loading or putting on platform : Lyon *v.* Gormley, 3 P. F. Sm., 261 ; Martin *v.* Porter, 5 M. & W., 351 ; Wild *v.* Holt, 9 *Id.*, 672 ; Morgan *v.* Powell, 3 Ad. & E., N. S., 278 ; Coleman's Ap., 62 Penna., 252.

*Carnahan & Son* for appellees.

Coleman's Ap., 12 P. F. Sm., 252. Universal custom has fixed the value of coal in place as the true value, which is in perfect accord with Coleman's appeal. The

[Oliver *v.* The Met. Nat. Bank of Pittsburgh *et al.*, Garnishees.]

rule would be different as to a willful trespasser, but the appellees are not trespassers, and have the right to mine the coal.

As the appellees were always willing to account under the lease, they should not bear any portion of the costs.

NOVEMBER 20, 1882.—PER CURIAM: We affirm this decree upon the report and opinion of the learned master in the Court below. We think also that the decree as to the costs was right.

> Decree affirmed and appeal dismissed at the costs of the appellant.

OCTOBER AND NOVEMBER TERM, 1882, No. 69.      OCTOBER 17, 1882.

# Oliver *v.* The Metropolitan National Bank of Pittsburgh *et al.*, Garnishees.

The Court below, in which there was a rule that all agreements of counsel touching the business of the Court should be in writing, struck off a judgment, entered against garnishees in an attachment execution for want of an answer, upon testimony of a verbal agreement by counsel for the plaintiff not to take judgment pending certain proceedings which had not terminated at the time of judgment and until after notice: *Held*, by a divided Court, that it was not error.

Before SHARSWOOD, C. J.; MERCUR, GORDON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas No. 2 for *Allegheny County*.

Attachment execution by D. B. Oliver, president of the School-District of Allegheny City, suing for the use of the said school-district and the school-district of the Sixth ward, Allegheny, against S. J. Crist, defendant, and William Blakely, and the Metropolitan National Bank of Pittsburgh, Garnishees.

The sheriff returned service of the writ upon the garnishees.

December 23, 1881, interrogatories were filed and a rule to answer was taken, the service of which was accepted by William Blakely for himself and as attorney for the bank.

On February 16, 1882, the Court entered judgment